UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

STEPHEN LAMONT RANDLE,

Debtor.
_____/

Case No. 21-41171

Chapter 7

Judge Thomas J. Tucker

**OPINION AND ORDER REGARDING FEE APPLICATIONS**

**I. Introduction**

This case is before the Court on two fee applications, one by the Chapter 7 Trustee and one by the Trustee's counsel. The applications are:

1. The fee application of the attorney for the Chapter 7 Trustee, filed on August 23, 2021, entitled "Final Application for Compensation for Counsel to the Trustee " (Docket # 34, the "Attorney Fee Application"), seeking a fee in the amount of $7,477.00 and reimbursement of expenses in the amount of $12.37; and

2. The fee application of the Chapter 7 Trustee, filed on August 26, 2021, in the document entitled "Trustee Application for Final Compensation and Reimbursement of Expenses" (Docket # 36, the "Trustee Fee Application"), seeking a fee in the amount of $1,900.00 and reimbursement of expenses in the amount of $64.96.

No timely objections to the fee applications were filed. But the Court concluded that a hearing was necessary. The Court stated the following in the Order setting the hearing:

> The Court notes that collectively the applicants seek fees totaling $9,377.00, plus reimbursement of expenses. By comparison, it appears that the applicants' efforts benefitted the estate, at most, in the amount of $11,500.00 (the total receipts listed in the Trustee's Final Report). Thus, the fees requested, if approved, would amount to approximately 81.5% of the amount collected with the assistance of applicants' services.
>
> The purpose of the hearing is to determine whether the requested fee amounts should be reduced, given the amount of the benefit to the estate in this case. *See, e.g., In re The Village Apothecary, Inc.*,

626 B.R. 893 (Bankr. E.D. Mich. 2021), *aff'd.*, 2021 WL 2102598 (E.D. Mich. May 25, 2021); *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 887-89 (Bankr. W.D. Ky. 1996); 11 U.S.C. §§ 330(a)(2), 330(a)(3)(C), 330(a)(3)(D), 330(a)(3)(F), 330(a)(4)(A)(ii).[1]

The Court held the hearing, by telephone, on October 27, 2021. The Chapter 7 Trustee and the attorney for the Chapter 7 Trustee appeared at the hearing. At the end of the hearing, the Court took the fee applications under advisement. The Court now will rule on the fee applications.

## II. Discussion

The Court has discussed the law governing fee applications in Chapter 7 cases in detail, in an opinion published a few months ago. *See In re Village Apothecary, Inc.*, 626 B.R. 893 (Bankr. E.D. Mich. 2021), *aff'd.*, No. 2:21-cv-10892, 2021 WL 2102598 (E.D. Mich. May 25, 2021). Rather than repeat that lengthy discussion, the Court incorporates it by reference here.

Applying the framework used in *Village Apothecary*, the Court finds and concludes the following.

First, the Court calculates the "lodestar amount" with respect to the Attorney Fee Application, and finds that the lodestar amount is the amount requested in the application, namely $7,477.00. This is the product of the total time spent by the Chapter 7 Trustee's counsel times the hourly rates charged by counsel, all as reflected in the itemization of fees that was filed with the application.[2]

Second, there is no comparable "lodestar amount" calculation to make with respect to the

---

[1] "Order Setting Hearing on Fee Applications" (Docket # 40) (footnote omitted).

[2] Docket # 34, Exs. 4, 5.

2

Trustee Fee Application, because the fee requested by the Trustee is calculated as a commission, applying the percentage maximums contained in 11 U.S.C. § 326(a) to the disbursements by the Trustee to parties in interest in this case other than the Debtor. *See* 11 U.S.C. §§ 330(a)(7), 326(a). The fee amount requested by the Trustee in this case is the *maximum* amount that can be awarded under these Bankruptcy Code sections. But under § 326(a), the Trustee's fee under these sections still must be "reasonable compensation under section 330" of the Code.

Third, with respect to the fee applications of both the Trustee and the Trustee's counsel, and under 11 U.S.C. § 330, the Court must determine what is a "reasonable" fee amount, after considering all of the relevant factors set forth in §§ 330(a)(3) and 330(a)(4), and the Court may, in its discretion, consider the other factors identified by the United States Court of Appeals for the Sixth Circuit in *In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991). In addition to the lodestar amount ("reasonable hours actually worked and a reasonable hourly rate"), the Court may, in its discretion, consider the following factors, among others: "the novelty and difficulty of the issues, the special skills of counsel, **the results obtained**, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area." *Boddy*, 950 F.2d at 338 (citation omitted) (emphasis added).

Fourth, the Court has considered all of the factors in §§ 330(a)(3) and 330(a)(4), and all of the factors identified in *Boddy*, and has determined that the total fees requested by the Trustee and his counsel are higher than what is reasonable, and should be reduced to the extent described below. In making this determination, the Court is exercising its discretion to make downward adjustments to the fees requested, including the lodestar fee amount of the Trustee's counsel. Under *Boddy*, the Court has discretion to do so based on a consideration of "the results obtained"

3

in this case by the Trustee and his counsel. *See, e.g., Village Apothecary*, 626 B.R. at 898-99, 904-05 (discussing the *Boddy* case).[3]

In considering "the results obtained" in this case, the Court has considered both "the amount in controversy and the results obtained." *See id.* at 904, 909-15. The Court has done this even though, in the Court's view, it is not necessary to consider the "amount in controversy" when considering the "results obtained." For the reasons suggested by this Court in *Village Apothecary*, under *Boddy*, it is permissible for the Court to consider the "results obtained" without considering the "amount in controversy." *See Village Apothecary*, 626 B.R. at 904-05, 906;[4] *see also In re Meda*, 634 B.R. 946, 948-49 (Bankr. E.D. Mich. 2021).

---

[3] The fee applicants argued at the hearing that such a reduction is precluded, for two reasons. First, they say, it is precluded by 11 U.S.C. § 330(a)(3)(C). That section requires the Court to consider, among many other factors, "whether the [attorney's] services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title[.]" Second, and relatedly, the applicants argue that such a reduction in fees, based on the results obtained, would impermissibly engage in "hindsight."

These arguments are incorrect. First, the list of factors in § 330(a)(3), including § 330(a)(3)(C), clearly is a non-exhaustive list of factors that the Court must consider in determining a reasonable fee. The first sentence of § 330(a)(3) says that the Court must "tak[e] into account all relevant factors, including" the factors listed in § 330(a)(3)(A) through 330(a)(3)(F). Second, this Court is bound by the Sixth Circuit's decision in *Boddy*, which forecloses both of the applicant's arguments. As this Court noted in *Village Apothecary*,

> In making this decision [to reduce fees based on the results obtained], the Court is not applying impermissible "hindsight analysis," . . . . [T]he Sixth Circuit's decision in *Boddy* permits the Court to reduce the lodestar fee amount based on, among other things, the "results obtained," as *Boddy* put it, . . . . This results-related factor necessarily involves some degree of what one might call hindsight, but that much is permitted. Otherwise, the results obtained could not be considered at all.

*Village Apothecary*, 626 B.R. at 912 (footnote omitted).

[4] There is, however, at least one decision by the district court in this district that held otherwise. That is the decision of the district court on the second appeal in the *Village Apothecary* case. *See* 626 B.R. at 904. This Court is not bound by that district court decision in this case, as a matter of *stare*

4

In this case, the result obtained by the Trustee and his counsel was $11,500.00 from the liquidation of the non-exempt property of the bankruptcy estate. This entire amount was obtained from the Trustee's settlement of potential claims against the Debtor's ex wife. Those claims were described in the Trustee's motion for approval of the settlement, filed May 18, 2021,[5] which the Court granted in an order filed June 15, 2021.[6]

Considering the results obtained, the Court concludes that the total amount of the fees requested in this case, $9,377.00 (the lodestar attorney fee amount plus the Trustee's requested fee amount), is excessive. The total fees requested, if approved, would amount to 81.5% of the amount collected with the assistance of applicants' services. And, as the Trustee's final report shows, if the fees are allowed in the full amount requested, the one priority unsecured creditor in this case (the Michigan Department of Treasury) will receive a distribution equal to only 9.1% of its allowed claim, and the non-priority unsecured creditors will receive no distribution on their allowed claims.[7]

"The bankruptcy court has 'broad discretion in determining attorney fees.'" *Village Apothecary*, 626 B.R. at 913 (citations omitted). The Court is convinced that it may, and should, in its discretion, reduce the total of fees to be allowed in this case to an aggregate amount of no

---

*decisis*. *See In re Wylie*, 630 B.R. 68, 73 (Bankr. E.D. Mich. 2021) and cases cited therein; *In re Harbin*, 626 B.R. 888, 890 n.1 (Bankr. E.D. Mich. 2021) and cases cited therein. This Court respectfully disagrees with the district court's decision in *Village Apothecary* on this issue. *See also Meda*, 634 B.R. at 949 n. 3.

[5] Docket # 22.

[6] Docket # 27.

[7] *See* Trustee's Final Report (Docket # 37) at pdf p. 10. The Michigan Department of Treasury has a $22,282.95 priority claim that must be paid in full before the other, non-priority unsecured claims can be paid anything. *See id.*; *see also* 11 U.S.C. §§ 726(a)(1), 726(a)(2), 507(a)(8).

more than $5,750.00, which is 50% of the total amount recovered by the Trustee and his counsel in this bankruptcy case. The Court views this as generous to the Trustee and the Trustee's counsel. And, in the Court's judgment, this "'strikes a fair and appropriate balance between the need to pay the bankruptcy estate's professionals a reasonable fee for their work, while at the same time making sure that 'the creditors in this case may receive a fair and meaningful distribution on their allowed claims.'" *Village Apothecary*, 626 B.R. at 913.

The result is the same if the Court considers and makes a comparison of the "amount in controversy" in this bankruptcy case with the "results obtained." Such a comparison can be done in at least two ways: (1) first, by comparing the $11,500.00 results obtained with the amount the Trustee *sought* to obtain in pursuing the potential claim against the Debtor's ex wife and otherwise from the liquidation of the estate's assets, *see Village Apothecary*, 626 B.R. at 909-11; or, (2) second and alternatively, by comparing the amount the creditors other than the Trustee and his counsel (the "other creditors") will receive with the total amount of the other creditors' allowed claims in this case. *See id.* at 911.

As for the first such measure, the record shows that although the Chapter 7 Trustee settled all claims against the Debtor's ex wife without filing an adversary proceeding, the Trustee informally pursued claims by making a demand and then negotiating with the Debtor's ex wife and her attorney. In that pursuit of claims, the Trustee asserted two types of potential claims: (1) a potential fraudulent transfer and/or preference claim; and (2) a claim for indemnification based on terms of the pre-petition judgment of divorce between the parties. As for the former claims, the Trustee stated in his settlement motion that "the potential ultimate recovery on the preference and fraudulent-transfer theories is approximately $120,000," although "the recovery of a lesser

6

21-41171-tjt    Doc 44    Filed 03/01/22    Entered 03/01/22 11:04:20    Page 6 of 9

amount, or nothing, [was] also possible."[8] As for the latter claim, the Trustee did not give an estimate of the potential recovery, or disclose the amount of any demand made on the Debtor's ex wife, if any.

Based on these facts, the Court finds that the "amount in controversy," as measured in the first way described above, was at least $120,000.00. By that measure, the Trustee's "results obtained" of $11,500.00 amount to 9.6% of the "amount in controversy." This shows partial, but far from complete, success by the Trustee in his pursuit of the claims against the Debtor's ex wife.

Comparing the "results obtained" with the "amount in controversy" in the second, alternative way described above, however, presents a bleaker picture. The Court finds from the Chapter 7 Trustee's Final Report that the total amount of allowed unsecured claims in this case, other than the administrative claims of the Trustee and its attorneys for fees and expenses, is the sum of (1) the priority claim held by the Michigan Department of Treasury in the amount of $22,282.95; plus (2) a total of $357,394.95 in non-priority unsecured claims,[9] for a total amount of $379,677.90.

If the total of these creditors' claims ($379,677.90) is considered the "amount in controversy," then "the appropriate measure of the 'results obtained' to compare it to would be the total amount to be paid to those creditors, after payment of the allowed fees and expenses of the Trustee and his attorneys. *See Village Apothecary*, 626 B.R. at 911. Measured in this way,

---

[8] "Trustee's Motion for Approval of Settlement" (Docket # 22, the "Settlement Motion") at 4-5, ¶ 21.

[9] *See* Trustee's Final Report (Docket # 96) at pdf p. 15.

7

and as the Trustee's Final Report shows, the "results obtained" for the one priority unsecured creditor would be only 9.1% of its allowed claim,[10] and the "results obtained" for the non-priority unsecured creditors would be 0% of the $357,394.95 total amount of their claims.

Given these numbers, and regardless of which method is used to compare the "results obtained" with the "amount in controversy," the Court reiterates its conclusion that the fees to be allowed in this case should be reduced to no more than an aggregate amount of $5,750.00.

## III. Conclusion and Order

For the reasons stated above,

IT IS ORDERED that:

1. The Court will allow the expenses requested in the fee applications in the full amounts requested, but the Court will allow fees only in amounts that, in the aggregate, do not exceed $5,750.00. The allowance of fees and expenses will be made by separate orders, to be entered at a future date, after the filing of a stipulation, or the passage of the time period, described in Paragraph 2 below.

2. The fee applicants may, if they wish, file a stipulation agreeing to a specific allocation among themselves of the fees to be allowed in this case.[11] Any such stipulation must be filed no

---

[10] During the hearing, the Trustee argued that the only other creditor with anything at stake in the Court's fee decision is the Michigan Department of Treasury, with respect to its priority claim. (Even if the Court were to award no fees to the fee applicants, all of the $11,500.00 in the estate would be distributed on the priority claim, so that the other, non-priority unsecured creditors would still receive no distribution.) And, the Trustee argued, the Michigan Department of Treasury's priority claim is nondischargeable, under 11 U.S.C. § 523(a)(1). Since that creditor's unpaid claim survives the Debtor's discharge, that creditor will be able to continue trying to collect on its claim against the Debtor. The Court has considered this argument in making its fee decision today. But it does not persuade the Court to award fees in an amount greater than the reduced aggregate amount stated in this Opinion and Order.

[11] In any such stipulation, of course, the fee applicants may, if they wish, reserve their right to appeal the Court's reduction of their fees from the full amounts requested in the fee applications.

later than March 8, 2022. And upon filing any such stipulation, the fee applicants must submit proposed orders that are consistent with the stipulation.

      3. If the fee applicants do not timely file a stipulation of the type described in Paragraph 2 above, the Court may schedule a further hearing concerning the appropriate allocation of fees to be made in this case, or may file an order resolving that issue without first holding such a hearing.

**Signed on March 1, 2022**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**